# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| STEVIE D. DAVIDSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Case No: 1:14-cv-01194-STA-cgc |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Stevie D. Davidson filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on November 21, 2012. On December 20, 2012, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on March 31, 1965. He has a seventh-grade education with special education classes. Plaintiff alleges disability beginning in 2011 due to migraines, varicose veins, back problems, left knee problems, and an inability to read or understand directions. He previously worked as a painter.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2015; (2) Plaintiff has not engaged in substantial gainful activity since the alleged amended onset date; (3) Plaintiff has the following severe impairments: migraines and a borderline IQ with associated learning disorder; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light unskilled work, but he is limited to one to three step verbal instructions associated with work at an unskilled level; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a limited education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules ("the Grids") directly supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to

---

[8] R. 15-22.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, a substantial number of jobs exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred by not properly evaluating the medical evidence in the record, especially the opinion of consultative examiner Dennis Wilson, Ph.D., and by failing to

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

consider whether his mental functioning met listing 12.05 (mental retardation) at step three of the sequential process. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain specified factors into consideration when determining how much weight to give the opinion.[16] A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[17] In the present case, Plaintiff has pointed to no treating source opinion that was overlooked or improperly weighed.

---

[14] 20 C.F.R. § 404.1527(c)(2).

[15] Soc. Sec. Rul. 96–2P.

[16] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[17] Soc. Sec. Rul. 96–2P.

State agency consultants, such Dr. Wilson, are highly qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[18] Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[19] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[20] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[21] Opinions from nontreating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[22] In the present case, Plaintiff complains that the opinion of Robert de la Torre, Psy.D., as to Plaintiff's intellectual functioning was credited by the ALJ over that of Dr. Wilson, even though Dr. Wilson was an examining source and Dr. de la Torre was not.

Dr. Wilson administered a Wechsler Adult Intelligence Scale-IV (WAIS-IV) test, which resulted in a full scale IQ score of 68 and subscores of 61, 90, 74, and 62.[23] He then assessed a

---

[18] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p.

[19] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[20] *Id.* § 404.1502, 404.1527(c)(2).

[21] Soc. Sec. Rul. No. 96–6p.

[22] 20 C.F.R. § 404.1527(c).

[23] R. 192-201.

reading disorder, a disorder of written expression, and mild mental retardation, and opined that Plaintiff was moderately limited in his ability to sustain concentration, persistence, and pace, and markedly limited in his ability to understand, remember, interact, and adapt to changes.[24] Dr. de la Torre reviewed the record and concluded that Plaintiff could understand and perform simple tasks; sustain concentration, persistence, and pace; interact appropriately with others; set practical goals; and adapt to infrequent changes.[25] Dr. de la Torre opined that the full scale IQ score obtained by Dr. Wilson was not useful due to the disparity between the verbal and performance scores, and he found that the testing was more consistent with a learning disorder; according to Dr. de la Torre, Plaintiff retained the ability to perform simple work tasks.[26]

The ALJ gave Dr. de la Torre's opinion greater weight because it was more consistent with the other evidence in the record than that of Dr. Wilson. For example, Plaintiff's work history and daily activities were not consistent with mental retardation. In particular, Dr. de la Torre pointed out that Plaintiff was able to hunt, fish, drive independently, socialize with family members, and cook complete meals.[27] Because Dr. de la Torre's opinion was more consistent with Plaintiff's work history and daily activities, the ALJ could properly assign his opinion greater weight.[28]

---

[24] R. 201.

[25] R. 203-19.

[26] R. 215, 219.

[27] R. 124-26, 215.

[28] *See* 20 C.F.R. § 404.1527(c)(4) (explaining that, generally, an ALJ will consider how consistent an opinion is with the record as a whole when determining what weight to give that opinion).

7

The ALJ also noted that Dr. de la Torre supported his opinion with a narrative explanation. The better an explanation that a source provides for an opinion, the more weight an ALJ will give that opinion.[29] Dr. de la Torre explained that a low verbal intelligence combined with average nonverbal abilities is characteristic of a learning disorder which does not satisfy the criteria of listing 12.05.[30] Dr. de la Torre also explained that a learning disorder could produce Plaintiff's reported symptoms without the presence of mental retardation.[31] Thus, Dr. de la Torre supported his conclusion that Plaintiff retained the ability to perform simple tasks at work.

Plaintiff argues that Dr. Wilson's opinion should have been greater weight since he was an examining source. A medical source's examining relationship with the claimant is only one of several factors an ALJ considers in weighing opinion evidence, and nothing requires an ALJ to give greater weight to an examining source in every case.[32] Here, the ALJ gave good reasons for assigning greater weight to the opinion of Dr. de la Torre. Plaintiff has established no error in the ALJ's consideration of the opinion evidence.

Next, Plaintiff argues that the ALJ erred at step three by failing to consider whether his mental functioning met listing 12.05 (mental retardation). To the contrary, the ALJ considered the evidence and explained why the record did not establish functioning at the level of mental retardation. To satisfy listing 12.05, a claimant must meet one of four severity prongs (12.05A -

---

[29] 20 C.F.R. § 404.1527(c)(3).

[30] *See Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 720-22 (6th Cir. 2012) (holding that the claimant established a learning disorder but did not satisfy the requirements of listing 12.05).

[31] R. 215.

[32] *See* 20 C.F.R. § 404.1527(c).

D) and the diagnostic description of mental retardation in the listing's introductory paragraph.[33] To prove disability under listing 12.05C, a claimant must establish (1) a valid verbal, performance, or full scale IQ score between 60 and 70, (2) an additional severe impairment, and (3) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]."[34]

Here, the ALJ found that Plaintiff did not establish the third requirement, i.e., deficits in adaptive functioning. The ALJ viewed Plaintiff's successful work history as a painter for nineteen years as demonstrating a level of functioning inconsistent with mental retardation. An ALJ may consider work history in determining whether a claimant's adaptive functioning is consistent with mental retardation.[35] Plaintiff's ability to work as a painter supports the ALJ's finding that he was not mentally retarded.

Plaintiff argues that his work history does not support the ALJ's findings in that he remained employed only because his employer accommodated his absences which were due to headaches. Even if Plaintiff's employer accommodated his headaches, this accommodation was not related to his mental ability to perform his job.[36]

---

[33] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A; *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).

[34] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

[35] *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 586-87 (6th Cir. 2013); *see also* 20 C.F.R. pt. 404, subpt. P, app 1, § 12.00D(3) (stating that information concerning a claimant's job history is "particularly useful in determining [claimant's] ability or inability to function in a work setting").

[36] *See* 20 C.F.R. § 404.1573 (providing that even "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.").

Additionally, Plaintiff's daily activities were inconsistent with mental retardation. An ALJ may consider a claimant's activities of daily living when analyzing adaptive functioning.[37] Plaintiff indicated that his difficulties in concentrating, understanding, and following directions stemmed from pain, not cognitive limitations.[38] And, his wife reported that, when he tried to work a full day and complete tasks, his headaches rather than a cognitive impairment prevented it.[39] Thus, Plaintiff's daily activities did not show mental retardation.

In addition, the ALJ looked at the fact that Plaintiff received unemployment benefits at the same time that he alleged disability. At the administrative hearing, Plaintiff testified that he continued to receive unemployment benefits, which he had received ever since he stopped working in August 2011.[40] Because a claimant must hold himself out as able to work in order to qualify for unemployment benefits, the receipt of these benefits contradicts a contemporaneous claim of disability.[41] For these reasons, substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal listing 12.05C.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile; the Commissioner may carry this burden by applying the Grids which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the

---

[37] *See Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014).

[38] R. 122, 127.

[39] R. 138, 143.

[40] R. 33, 37.

[41] *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004).

claimant has transferable work skills.[42] Because the non-exertional mental limitations in Plaintiff's residual functional capacity did not significantly erode the occupational base of unskilled work, see SSR 85-15, the ALJ properly determined that, considering Plaintiff's age, education, work history, and residual functional capacity, the Grids supported a finding of not disabled.[43]

Because substantial evidence supports the ALJ's determination that Plaintiff was not disabled, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 10, 2017.

---

[42] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[43] *See, e.g.,* 20 C.F.R. pt. 404, Subpt. P, App. 2, § 202.16 (directing a finding of not disabled for a claimant limited to light work who is a younger individual (age 18 through 49), is illiterate or unable to communicate in English, and has at most unskilled work experience.)